IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SIMON PIRELA, a/k/a SALVATORE
MORALES,

              Petitioner,

    v.

COMMISSIONER MARTIN HORN, et al.,

            Respondent.

CIVIL ACTION
NO. 90-5013

## OPINION

**Slomsky, J.**                                                                                                         **October 1, 2013**

### TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………………….. 1

II.    BACKGROUND……………………………………………………………… 2

III.    STANDARD OF REVIEW……………………………………………………… 7

    A.  Pre-AEDPA Review………………………………………………………... 7

    B.  De Novo Review of Objections to Report and Recommendation ………………. 8

IV.    ANALYSIS……………………………………………………………… 9

    A.  Petitioner's First Objection Is Unavailing Because The Underlying

        Constitutional Claims Are Either Without Merit Or Procedurally

        Defaulted ……………………………………………………………….. 11

        a.  Petitioner's Claim That His Jury Trial Waiver Was Involuntary

           And Unknowing Because He Relied On Judge Stout's Statement

           Is Without Merit…………………………………………………………12

b. Petitioner's Claim That His Jury Trial Waiver Was Involuntary And Unknowing Because He Is Mentally Retarded Is Procedurally Defaulted…………………………................................................ 14

B. Petitioner's Second Objection Is Without Merit Because His Ineffective Assistance Claim Is Procedurally Defaulted And Cause And Prejudice Have Not Been Shown…………………………………………………...18

a. Petitioner's First Ineffective Assistance Claim Is Procedurally Defaulted……………………………………………………19

b. Petitioner Cannot Establish Cause And Prejudice To Excuse Default……………………………………………………20

C. The Next Ineffective Assistance Of Counsel Claim Raised In Petitioner's Third Objection Is Also Without Merit………………………………22

D. Petitioner's Fourth Objection That His Brady Claim Has Not Been Procedurally Defaulted, While Correct, Is Not A Basis For Relief Because The Underlying Claim Is Without Merit………………………26

a. Petitioner's Brady Claim Was Not Procedurally Defaulted Because The Relaxed Waiver Rule Applies……………….....................27

b. Petitioner's Brady Claim Is Without Merit……………………..30

E. Petitioner's Fifth Objection That The Incorrect Standard Of Review Was Applied, While Correct, Is Not A Basis For Relief Because The Result Is The Same When Applying The Pre-AEDPA Standard Of Review……………...32

F. Petitioner's Sixth Objection That His Constitutional Claims Have Not Been Procedurally Defaulted, While Correct, Is Not A Basis For Relief Because The Underlying Claims Are Without Merit………………………………………...36

G. Petitioner's Seventh Objection Is Without Merit Because The Underlying Claim Of State Error Does Not Provide A Basis For Federal Habeas Review…………………………………………………………………….... 39

H. Petitioner's Eighth Objection Is Unfounded Because The Underlying Cumulative Error Claim Is Without Merit………………………………………40

I. Petitioner's Ninth Objection Is Unfounded Because The Underlying Ineffective Assistance Claim Is Without Merit…………………………………40

V. CONCLUSION ………………………………………………………………………41

# I.    INTRODUCTION

Before the Court are Objections to the Report and Recommendation of United States Magistrate Judge Henry S. Perkin recommending the denial of the Third Amended Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Simon Pirela a/k/a Salvatore Morales ("Petitioner").[1] (Doc. No. 151.)  Petitioner seeks relief based on a variety of alleged constitutional violations including violations of his Sixth Amendment rights to a trial by jury and to effective assistance of counsel and his Fourteenth Amendment right to due process of law.

Following a review of the filings by the parties and the pertinent record, the Magistrate Judge issued a Report, recommending that the Third Amended Petition for a Writ of Habeas Corpus be denied and that a certificate of appealability not be issued.  (Doc. No. 145.)  As noted, Petitioner has filed Objections to the Report and Recommendation.  (Doc. No. 151.)  For reasons that follow, the Court will adopt in part the Magistrate Judge's Report, adopt in full the Recommendation, and deny the Third Amended Petition for a Writ of Habeas Corpus.[2]

---

[1] For purposes of this Opinion, the Court has considered the Sur Reply of the District Attorney's Office of Philadelphia ("Respondent") to Petitioner's Memorandum of Law (Doc. No. 81), the Third Amended Petition for a Writ of Habeas Corpus (Doc. No. 116), Appendix to the Petition (Doc. No. 117), Response to the Petition with accompanying exhibits (Doc. No. 132), Reply Memorandum in Support of the Petition (Doc. No. 141), Report and Recommendation of the U.S. Magistrate Judge (Doc. No. 145), Objections to the Report and Recommendation (Doc. No. 151), Response to the Objections (Doc. No. 156), Reply in Support of the Objections (Doc. No. 157), and the pertinent state court record.

[2] In his Report, the Magistrate Judge correctly noted that the law in place before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") should govern the claims raised by Petitioner because the Petition was originally filed in 1990.  In deciding the fifth claim raised in the Petition, however, the Judge relied upon current AEDPA law which does not apply here.  Despite this error, this Court has undertaken an independent review applying the correct law.  After doing so, this Court has reached the same conclusion as the Magistrate Judge on the merits of the fifth claim.

## II.     BACKGROUND

On March 12, 1984, Petitioner received a capital sentence in the Court of Common Pleas

of Philadelphia County.  The sentence was imposed by the Honorable Juanita Kidd Stout who,

sitting without a jury, found Petitioner guilty of first degree murder and criminal conspiracy.[3]

(Doc. No. 117 at A82-84.)  Petitioner waived a jury on the guilt and penalty phases of trial, and

Judge Stout imposed the death penalty as the sentence.  On direct appeal, the Pennsylvania

Supreme Court described the facts of the case as follows:

> At approximately 1:00 a.m. on May 5, 1981, Pablo Ortiz, the victim in this case,
> was visited at his home by Carlos Tirado and Miquel Pirela, the brother of
> [Petitioner]. The three young men left the home of Ortiz and "shot" heroin. When
> Pirela became ill, Ortiz and Tirado delivered Pirela to his home. Pirela's wife
> testified that when she awoke on the morning of May 5, her husband was dead.
> Although all three men had used heroin from the same source and the same
> appliances, only Miquel Pirela died. The cause of Pirela's death was determined
> to be a drug overdose, achieved through non-homicidal means.
>
> Later on the day of May 5, [Petitioner] visited Ortiz's home and announced his
> intention to kill Pablo. [Petitioner] said that Pablo had killed [Petitioner's]
> brother and either Pablo or Carlos Tirado "had to go."
>
> Gilberto Giraud Romero, who was also charged in connection with the murder of
> Pablo Ortiz, testified for the Commonwealth against [Petitioner] and his two co-
> defendants. Romero testified that on May 6, the day after Miquel Pirela's death, at

---

Moreover, in claims four and six asserted in the Petition, the Magistrate Judge did not consider
what is known as the "relaxed waiver" rule and found the claims made by Petitioner procedurally
defaulted.  The "relaxed waiver" rule was a creation of the Supreme Court of Pennsylvania and
has since been abrogated.  Because there is no procedural default when the "relaxed waiver" rule
is applied, the fourth and sixth claims made by Petitioner must be considered on the merits.  This
Court has done so in this Opinion and finds those claims to be without merit.

Because of the different legal position taken on claims four to six, this Court is only adopting in
part the Report of the Magistrate Judge.  But the final Recommendation denying relief will be
adopted in full.

[3] Petitioner waived his right to a jury and was convicted by Judge Stout on June 24, 1983.  This
waiver is the basis of several claims made here by Petitioner.

about 1:00 p.m., he went to his sister's home. There both [Petitioner] and his brother, Heriberto Pirela, announced their intentions to kill Pablo Ortiz. Approximately 20 minutes later Ortiz joined the men. Both Pirela brothers inflicted a brutal beating upon Ortiz who was struck by fists and by a tire which was mounted on a rim. Ortiz was then pushed into the basement of the house where the beating continued. Eventually, Heriberto Pirela instructed Carlos Tirado to inject Ortiz with battery acid, or face death himself. While [Petitioner] and Pedro Torres held Ortiz's hands, the injection was accomplished. Ortiz became unconscious.

Ortiz's unconscious body was loaded into an automobile belonging to Heriberto Pirela, and Romero was instructed to drive. [Petitioner] warned Carlos Tirado that if Pablo Ortiz did not die, [Petitioner] would kill Tirado. While Romero drove the automobile, Tirado strangled Ortiz with a pair of socks. Romero was warned by [Petitioner] that if he "ratted" on [Petitioner], [Petitioner] would kill him. The families of Romero and Tirado were also threatened. Much of Romero's testimony was corroborated by Carlos Tirado who testified on his own behalf.

[Petitioner] admitted hitting Pablo Ortiz in the course of questioning Ortiz as to the cause of Miquel Pirela's death. However, [Petitioner] testified that the murder of Pablo Ortiz was the handiwork of Carlos Tirado, and that [Petitioner] neither participated in nor directed the homicide. The fact finder specifically found [Petitioner's] testimony incredible.

Ortiz's dead body was deposited on a bridle path in Fairmount Park where it was discovered by a jogger. The immediate cause of Ortiz's death was determined to be strangulation. The beating was deemed to be a contributory cause in that it may have left Ortiz defenseless when the ligature was applied.

Commonwealth v. Pirela, 507 A.2d 23, 24-25 (Pa. 1986).

At trial, Petitioner was represented by Romaine G. Phillips, Esquire ("trial counsel").

(Doc. No. 116 at ¶ 1.)  During a pre-trial conference in front of Judge Stout, an exchange took

place on the record which is the basis for several of Petitioner's claims here.  That exchange

occurred as follows:

MR. PHILLIPS [trial counsel]: Your Honor, one additional thing, if your Honor pleases—and this is not Phillips on evidence—but I would request—[Petitioner] is charged with conspiracy. That is a substantive offense, and this situation—

THE COURT: Would you be quite [sic] a minute? Go ahead.

MR. PHILLIPS: Thank you, your Honor. The maximum sentence that [Petitioner] could receive would be that of a felony of the second degree on conspiracy. He is also charged with murder. It's my question as to whether or not it's the Commonwealth's intent to show that [Petitioner] was in fact the actor or the person who committed the murder.

THE COURT: Are you asking me?

MR. PHILLIPS: Well, this is what happened, your Honor, because—if it isn't that theory, then [Petitioner] could not be found guilty of first-degree murder in that situation. What I'm asking is that your Honor rule based on the Commonwealth's representation as to whether or not [Petitioner] is being charged as the actor of the murder or is [Petitioner] being charged with the murder as being a co-conspirator.

THE COURT: Won't that come out in the evidence?

MR. BYRD [prosecutor]: I should think so.

MR. PHILLIPS: Well, your Honor, I think—

THE COURT: How can I rule on that? I haven't heard any evidence and I don't see how Mr. Byrd can make a representation. The witnesses may get up from there and say something different than what he thinks they are going to say. If that is not Phillips on evidence, who is it?

MR. PHILLIPS: Judge Carson. The important thing about it is this: He's not subject to the death penalty if he is not deemed to be the doer, or the actor of the murder, or the aggravating circumstances.

THE COURT: Why are you arguing all this? Didn't you say it was going to be a waiver?

MR. PHILLIPS: That's correct.

THE COURT: He's not subject to the death penalty as long as he has me for a Judge.

(Doc. No. 117 at A22-24.)  Petitioner alleges that Judge Stout's statement that he would not be subject to the death penalty as long as he had her for a judge was an affirmative promise that Petitioner relied upon when deciding whether to waive his right to a jury trial during the guilt phase of his trial.  Petitioner decided to waive his right to a jury during both the guilt and penalty

phases of his trial, was convicted of first-degree murder and criminal conspiracy, and was sentenced to death.

After his conviction, Petitioner appealed directly[4] to the Pennsylvania Supreme Court and was represented by new counsel, Michael J. Stack, Esquire ("appellate counsel"). (Doc. No. 116 at ¶ 2.) On direct appeal, the Pennsylvania Supreme Court rejected Petitioner's claims as meritless and affirmed the judgment of sentence. Pirela, 507 A.2d at 32. Petitioner then filed the instant habeas petition, pro se, on July 31, 1990. (Doc. No. 116 at ¶ 4.) The Petition was assigned to the Honorable James T. Giles who placed it in suspense pending exhaustion of Petitioner's claims in state court. (Id.)

On June 8, 1992, Petitioner filed a petition in state court, seeking relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. § 9541 et seq. (Id. at ¶ 5.) The PCRA petition was originally assigned to the Honorable Joseph I. Papalini, but on November 29, 1994, it was reassigned to Judge Stout, the same judge who convicted and sentenced Petitioner in the underlying murder case.[5] (Id. at ¶¶ 5-7.) Judge Stout denied the PCRA petition, and on February 16, 1999, the Pennsylvania Supreme Court affirmed the denial. Commonwealth v. Pirela, 726 A.2d 1026 (Pa. 1999). The Supreme Court denied Petitioner's motion for reargument later that year, and on January 10, 2000, the United States Supreme Court denied certiorari. Pirela v. Pennsylvania, 528 U.S. 1082 (2000).

---

[4] In all cases where the death penalty is imposed, the appeal is taken directly to the Supreme Court. 42 Pa.C.S.A. § 722(4). See also Pirela, 507 A.2d at 24.

[5] This transfer was done pursuant to Pennsylvania Rule of Criminal Procedure 903(A) which provides: "Upon receipt of a petition for post-conviction collateral relief, . . . the clerk shall transmit the petition and the criminal case file to the trial judge, if available, or to the administrative judge, if the trial judge is not available."

Two years later, on June 20, 2002, the Supreme Court held that execution of a mentally retarded defendant is cruel and unusual punishment prohibited by the Eighth Amendment and that "the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender." Atkins v. Virginia, 536 U.S. 304, 321 (2002) (quoting Ford v. Wainwright, 477 U.S. 399, 405 (1986)).  Following this decision, Petitioner filed a second PCRA petition on August 19, 2003, arguing that he was mentally retarded, and therefore, the death penalty imposed on him was unconstitutional under Atkins.  (Doc. No. 116 at ¶ 12.)

This Court stayed the instant habeas petition in August 2003, pending resolution of Petitioner's Atkins claim.  (Id. at ¶ 13.)  From October 27, 2003 to November 17, 2003, the PCRA court held an evidentiary hearing where various mental health experts and witnesses testified.  (Doc. No. 132 at 12.)  On April 30, 2004, the PCRA court found Petitioner to be mentally retarded and therefore ineligible for execution under Atkins.  Commonwealth v. Pirela, Jan. Term 1983, Nos. 2143-45, at 11 (C.C.P. Phila., Apr. 30, 2004).  That court vacated Petitioner's death sentence and instead imposed a sentence of life imprisonment.  Id. at 16.  The new sentenced was affirmed by the Pennsylvania Supreme Court affirmed on August 20, 2007.  Commonwealth v. Pirela, 929 A.2d 629 (Pa. 2007) (per curiam).

In October 2008, Petitioner's case was transferred to District Court Judge Joel H. Slomsky, who assigned it to U.S. Magistrate Judge Henry S. Perkin for a Report and Recommendation.  (Doc. No. 132 at 13.)  On June 11, 2009, Petitioner filed the Third Amended Petition for a Writ of Habeas Corpus which challenges his state court conviction rather than his sentence.  (Doc. No. 116.)  The Magistrate Judge issued his Report and Recommendation on May 11, 2012 (Doc. No. 145.)  As noted, the Objections to the Report and Recommendation are now before the Court.

**III. STANDARD OF REVIEW**

**A. Pre-AEDPA Review**

Petitioner filed his habeas petition prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[6] and therefore, the AEDPA does not apply to the Third Amended Petition for a Writ of Habeas Corpus. See Woodford v. Garceau, 538 U.S. 202, 207 (2003) ("[W]hether AEDPA applies to a state prisoner turns on what was before a federal court on the date AEDPA became effective. If, on that date, the state prisoner had before a federal court an application for habeas relief seeking adjudication on the merits of the petitioner's claims, then amended § 2254(d) does not apply."); see also Thomas v. Chappell, 678 F.3d 1086, 1100 (9th Cir. 2012) ("[W]here . . . a petitioner filed a habeas application before the effective date of AEDPA and the district court retained jurisdiction over the case, AEDPA does not apply even if the petitioner files an amended petition after the effective date of AEDPA.").

Respondent conceded that pre-AEDPA law applies in this case. (Doc. No. 132 at 9) ("It is because Judge Giles stayed the petition, rather than dismiss it without prejudice pending further state court litigation and exhaustion, that [P]etitioner has avoided the current deferential AEDPA standard of review.") Consequently, the Court does not adopt Section II.E of the Report and Recommendation discussing the fifth claim in the Petition, which applies the AEDPA standard of review. Instead, this Court will review that claim on the merits, applying the appropriate standard.

Prior to the AEDPA, "state court factual findings were presumed correct unless, inter alia, they were not 'fairly supported by the record.' State court legal conclusions were reviewed

---

[6] Petitioner filed the instant federal habeas petition in 1990, prior to the enactment of the AEDPA in 1996.

de novo, as were mixed questions of law and fact." Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (internal citations omitted). The Supreme Court had explained, however, that a "federal habeas court, should, of course, give great weight to the considered conclusions of a coequal state judiciary." Miller v. Fenton, 474 U.S. 104, 112 (1985); see also Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000) (citing Miller). Pre-AEDPA, a "writ of habeas corpus [could] issue only if the reviewing court [found] that the constitutional error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" Szuchon, 273 F.3d at 319 (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

**B. De Novo Review of Objections to Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge may designate a magistrate judge to file proposed findings and recommendations. Any party may file written objections in response to those findings. Id. § 636(b)(1)(C). In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs Petitioner's objections to the Magistrate Judge's Report and Recommendation. Under this Rule, Petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections . . .." Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012) (quoting Local R. Civ. P. 72.1.IV(b)). The district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The judge] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). The Third Circuit has "assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the

decision of the court." <u>Henderson v. Carlson</u>, 812 F.2d 874, 878 (3d Cir. 1987); <u>see also</u> <u>Miller</u>

<u>v. Astrue</u>, No. 10-2247, 2012 WL 2500326, at \*4 (E.D. Pa. June 29, 2012).

## IV.    ANALYSIS

In his Third Amended Petition for a Writ of Habeas Corpus, Petitioner raises nine claims

for the Court to consider.  The Magistrate Judge reviewed all nine claims, and this Court will

now review Petitioner's nine objections to the Report and Recommendation.  Because the

Magistrate Judge found many of the claims procedurally defaulted, this Court will briefly discuss

the standard for determining when a claim is procedurally defaulted.

Procedural default is governed by Supreme Court decisions that pre-date the AEDPA.

For reasons of comity, a federal court "will not review a question of federal law decided by a

state court if the decision of that court rests on a state law ground that is independent of the

federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722,

729 (1991).  At times, a state court will deny a federal claim if a petitioner has not followed an

applicable state procedural rule, which is a state law ground independent of the federal question

claim.  The state procedural rule must be both independent and adequate in order to bar federal

habeas review.  <u>Id.</u>  A state procedural rule is "independent" when resolution of the state law

question does not depend on a federal constitutional ruling.  <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75

(1985).  Such a rule is "adequate" if, at the time of the alleged default, "it was 'firmly established

and regularly followed' . . .." <u>Lewis v. Horn</u>, 581 F.3d 92, 105 (3d Cir. 2009) (quoting <u>Ford v.</u>

<u>Georgia</u>, 498 U.S. 411, 423-24 (1991) (quotation omitted)).  The "independent and adequate"

requirement ensures that Petitioner will have had fair notice of the need to follow the state

procedural rule or else federal habeas review will be barred.  <u>Bronshtein v. Horn</u>, 404 F.3d 700,

707 (3d Cir. 2005).

Although a federal question may not serve as the basis for granting a petition for a writ of habeas corpus if the state court decision rests on an independent and adequate state ground, the United States Supreme Court has carved out an exception to this procedural default rule. Even if the state court determined that a federal claim was procedurally defaulted, federal law will permit the claim to be heard on federal habeas review if a justifiable reason for the default can be shown. The Supreme Court has said that procedural default will be excused if Petitioner can show cause for the default and prejudice resulting from the alleged federal violation.[7] Coleman, 501 U.S. at 750. "Cause" for default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Murray v. Carrier, 477 U.S. 478, 492 (1986). Thus, cause is shown when "the factual or legal basis for a claim was not reasonably available to counsel, or . . . 'some interference by officials,' made compliance impracticable . . .." Id. at 488 (internal citations omitted). On the other hand, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id. at 486.

To demonstrate prejudice, Petitioner must show:

[N]ot merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied "fundamental fairness" at trial.

---

[7] Procedural default may also be excused if Petitioner demonstrates that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Because Petitioner's objections rely on the "cause and prejudice" exception to procedural default, the Court will not address the "fundamental miscarriage of justice" ground for excuse.

Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  If both cause and prejudice are successfully shown, procedural default will be excused, and the Court may review the merits of the claim.

### A.  Petitioner's First Objection Is Unavailing Because The Underlying Constitutional Claims Are Either Without Merit Or Procedurally Defaulted

Petitioner's first objection to the Report and Recommendation of the Magistrate Judge is contained in what he styles as "Count I."[8]  Petitioner argues in his Third Amended Petition that his waiver of a jury trial at the guilt or innocence phase was not voluntary for two reasons.  First, in waiving a jury trial, he relied upon the following statement of Judge Stout:  "He's not subject to the death penalty as long as he has me for a Judge."  (Doc. No. 117 at A24.)  He contends that this statement was misleading because he did receive the death penalty, and had he known about its falsity, he would not have waived a jury trial.  Second, he argues that his mental retardation or incompetency rendered his waiver of a jury trial unknowing and involuntary.

Petitioner makes three objections to the findings of the Magistrate Judge on these claims.  Initially, Petitioner objects to the Report for "fail[ing] to reach the merits of the claim by applying a non-existent standard of review that inexplicably treats state court factual determinations as sacrosanct . . .."  (Doc. No. 151 at 11.)  Next, Petitioner argues that the Magistrate Judge erred in failing to find Judge Stout's statement misled him into waiving a jury trial.  Finally, regarding his claim that the waiver was unknowing and involuntary because of his mental incompetency, the Magistrate Judge erred in finding this claim defaulted and not excused

---

[8] In the Third Amended Petition for a Writ of Habeas Corpus, Petitioner raises nine claims for relief.  In the Objections to the Report and Recommendation, Petitioner refers to each objection as a "Count."  For purposes of consistency, the Court will also use the word "Count" when referring to each of Petitioner's nine objections.

for "cause and prejudice." (Id. at 14.)  The Court is not persuaded that these grounds have merit and agrees with the findings of the Magistrate Judge.

> ### a. Petitioner's Claim That His Jury Trial Waiver Was Involuntary And Unknowing Because He Relied On Judge Stout's Statement Is Without Merit

In his Third Amended Petition for a Writ of Habeas Corpus, Petitioner argues that his reliance on Judge Stout's statement that she would not impose the death penalty induced Petitioner to waive his right to a jury during the guilt phase of his trial and caused his jury waiver to be involuntary and unknowing.  As Petitioner argues:

> [Petitioner's] jury waiver at the guilt phase of trial was induced not only by ambiguous statements or general remarks, but by [Judge Stout's] clear and unequivocal on-the-record assurance that, if [Petitioner] waived his right to a jury, he would not be subject to the death penalty.  Because of this assurance, [Petitioner's] jury waiver was not knowing, voluntary and intelligent.

(Doc. No. 116 at ¶ 95.)  Petitioner alleges that his waiver was invalid "[b]ecause of this assurance[,]" rather than as a result of any mental retardation.  (Id.)  Thus, at this point, the Court will analyze Petitioner's claim that his reliance on Judge Stout's statement, rather than his mental condition, caused him to waive a jury trial.

This iteration of the claim was fairly presented to the state courts.  For this reason, it is not procedurally defaulted.  However, the claim fails on the merits.  Under the pre-AEDPA standard of review, state court factual findings are presumed correct unless they are not "fairly supported by the record."  Szuchon, 273 F.3d at 312 (3d Cir. 2001) (internal citations omitted). Here, the state court factual finding that Judge Stout's comment did not induce Petitioner to waive his right to a jury is fairly supported by the record.  The pertinent part of the exchange with trial counsel was as follows:

> MR. PHILLIPS: . . . The important thing about it is this: He's not subject to the death penalty if he is not deemed to be the doer, or the actor of the murder, or the aggravating circumstances.
>
> THE COURT: Why are you arguing all this? Didn't you say it was going to be a waiver?
>
> MR. PHILLIPS: That's correct.
>
> THE COURT: He's not subject to the death penalty as long as he has me for a Judge.

(Doc. No. 117 at A22-24.) In this exchange, trial counsel is acknowledging that Petitioner made a decision to waive his right to a jury trial before Judge Stout made the statement about the death penalty. Therefore, the Court agrees with both the Pennsylvania Supreme Court and the Magistrate Judge that Petitioner decided to waive his right to have a jury to decide his guilt or innocence before Judge Stout made her remark. This is evidenced by the fact that when Judge Stout asked, "Didn't you say it was going to be a waiver[,]" trial counsel responded, "That's correct[,]" indicating that the decision to waive a jury trial had already been made.

Moreover, the record fully supports the following summary of the state court's factual findings as contained in the decision of the Supreme Court of Pennsylvania on the denial of the first PCRA petition:

> This court held [in the direct appeal] that no error occurred for the following reasons. First, [Petitioner's] decision to waive a jury was made prior to the court's comment. Second, the court's dialogue immediately preceding that statement carefully instructed that counsel's motion respecting the appropriateness of the death sentence was premature and if the evidence proved as defense counsel predicted, [Petitioner] would not be sentenced to death by the tribunal.
>
> Third, the record reflects that the trial court judge informed the prosecutor during the penalty hearing that she had "no conscientious and philosophical objections which would prevent [her] from imposing the death penalty in a proper case.... I will follow the law as I see it.... I will also tell you now that I will not impose a death penalty on all of them. That is not to say I won't impose the death penalty on some of them." This served to alert [Petitioner's] counsel of the possibility that appellant could be sentenced to death.

13

Fourth, during the extensive waiver colloquy preceding the penalty phase of the trial, the court informed [Petitioner] of the possibility of the death penalty, the process by which the death penalty would be determined and of his right to a jury. She inquired whether [Petitioner] discussed with his counsel whether he should waive a jury at the sentence phase. [Petitioner] said "yes" and indicated that he was not forced or otherwise promised or coerced to waive his right to a trial by jury.

Also, the record reflects [Petitioner] signed a written waiver of right to a jury trial as required by Pa.R.Crim.P. 1101.

Pirela, 726 A.2d at 1031 n.9 (internal citations omitted).

Despite these supported findings, Petitioner objects to the Report for "[fail[ing] to reach the merits of the claim by applying a non-existent standard of review that inexplicably treats state court factual determinations as sacrosanct . . .." (Doc. No. 151 at 11.) Rather than treat the state court decisions as "sacrosanct," the Magistrate Judge was permitted to find their factual determinations to be correct because they are fairly supported by the record. The Court agrees that Judge Stout did not induce Petitioner to waive his right to trial by jury. Thus, this claim fails on the merits.

### b. Petitioner's Claim That His Jury Trial Waiver Was Involuntary And Unknowing Because He Is Mentally Retarded Is Procedurally Defaulted

As noted previously, in the first claim of his Third Amended Petition for a Writ of Habeas Corpus, Petitioner also argues that he has a mental impairment that rendered his jury waiver involuntary and unknowing. (Doc. No. 116 at ¶ 87.) This specific claim was not fairly presented to the state courts for review, and therefore is procedurally defaulted.

On direct appeal of his murder conviction to the Supreme Court of Pennsylvania,[9] Petitioner argued that Judge Stout violated his Fourteenth Amendment right to due process by

_____

[9] See note 4, supra.

failing to adhere to the alleged promise that she would not impose the death penalty. (Doc. No. 132, Exhibit A at 9-10.) Not once in his supporting brief to the Supreme Court did Petitioner allege that his jury waiver was unknowing or involuntary because he was mentally retarded. (Id.) Instead, Petitioner only argued that his sentencing phase jury waiver was invalid. The first time Petitioner argued that his waiver was involuntary and unknowing because Judge Stout's statement induced him to waive a jury trial was in his first PCRA petition. (Doc. No. 132, Exhibit B at 6.) Again, Petitioner did not allege in the PCRA petition that the waiver was the result of mental retardation.

Petitioner did file a second PCRA petition alleging that because he was mentally retarded, he could not be executed. The Philadelphia Court of Common Pleas Judge considered the claim that "[Petitioner] is mentally retarded and thus to execute him would be cruel and unusual punishment under the 8th Amendment of the United States Constitution as recently set forth in <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002)." <u>Pirela</u>, Jan. Term 1983, Nos. 2143-45, at 4 (C.C.P. Phila., Apr. 30, 2004). After considering all witness testimony, expert reports, prior decisions, and parties' briefs, the court determined that Petitioner "qualifies as a mentally retarded person where execution is prohibited by law." <u>Id.</u> at 11. Petitioner's death sentence was vacated, and a sentence of life imprisonment was imposed. <u>Id.</u> at 16. As noted, at no time did Petitioner claim that he was incapable of entering a voluntary and knowing waiver of his right to a jury at the guilt phase of his trial.

Petitioner's argument that his jury trial waiver was involuntary under the Sixth Amendment because he was mentally retarded first appears in the Third Amended Petition for a Writ of Habeas Corpus. (Doc. No. 116 at ¶ 87.) Because it was not raised in state court, this argument is procedurally defaulted. According to the United States Supreme Court:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, "[a]ll claims that a petitioner in state custody attempts to present to a federal court for habeas corpus review must have been fairly presented to each level of the state courts . . .." Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citations omitted). In order to determine whether a claim has been fairly presented, "mere similarity" between the claim raised in front of the state courts and the claim raised in front of the federal habeas court is not sufficient. Duncan v. Henry, 513 U.S. 364, 366 (1995) (citations omitted). Instead, for Petitioner to have fairly presented this claim to the state courts, he must demonstrate that "he has presented the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are substantially equivalent to those asserted in federal court." Henderson v. Frank, 155 F.3d 159, 164-65 (3d Cir. 1998) (quoting Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) abrogated on other grounds by Beard v. Kindler, 558 U.S. 53 (2009)).

In this case, Petitioner has not presented the legal theory that his jury waiver was unknowing and involuntary because of his mental retardation for state court review. He did not allege this theory on direct appeal or in any PCRA petition that was subject to the state appellate process. Petitioner argues that the supporting facts in this petition are the same as those presented to the state courts, relying on the fact that at the PCRA hearing where he alleged that his mental incompetence should void the death sentence. At that hearing, he introduced testimony of Dr. Antonio E. Puente, Ph.D. who opined that Petitioner was incapable of entering a knowing and voluntary waiver. The testimony was for the purpose of showing that the death

penalty should not be imposed. Despite Dr. Puente's findings about Petitioner's ability to waive his right to a jury, this finding does not overcome the fact that it was not in support of the legal theory that Petitioner's jury trial waiver was involuntary and unknowing because of his mental retardation. Simply put, this legal theory with supporting facts has never been considered by a state court.

The failure to present this legal theory and supporting facts to the state court is a procedural default. It can only be overcome under the cause and prejudice exception to the procedural default rule. Petitioner objects to the Report for failing to adequately discuss the "cause and prejudice" exception to the procedural default rule (Doc. No. 151 at 14.) The Court finds that the exception does not apply.

Petitioner raises two grounds for cause to excuse procedural default of this claim: 1) the evidence of his mental condition could not have been presented on direct appeal since it was not part of the trial record; and 2) the PCRA court's denial of his requests for expert funding and discovery to develop additional evidence of his mental health prevented him from presenting this evidence earlier. (Id.) Neither ground for cause is persuasive. First, trial counsel's failure to recognize a mental incompetence claim does not constitute cause to excuse procedural default. Murray, 477 U.S. at 486 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim . . . does not constitute cause for a procedural default." ). Second, the request for funding occurred in 1993. However, no cause flows from the denial of funding in 1993 as it relates to the waiver of Petitioner's trial rights in 1983. The denial of Petitioner's requests to the PCRA court in 1993 could not have caused him to waive a jury trial ten years earlier, as Petitioner alleges. (Doc. No. 151 at 14.) Moreover, no prejudice exists for the same reason. Both Judge Stout and Petitioner's trial counsel closely interacted with Petitioner during and after

his waiver of a jury trial. From the record in this case, neither had any concern that Petitioner at the time suffered a mental impairment that would have prevented him from understanding his rights in waiving a jury trial. Furthermore, the evidence of Petitioner's guilt was overwhelming. At this point, Petitioner has made no showing, and there is no reason to believe, that a jury would have rendered a verdict different from Judge Stout's verdict. Because Petitioner failed to establish the necessary cause and prejudice to excuse his procedural default, he cannot pursue this claim in the Third Amended Petition.

### B. Petitioner's Second Objection Is Without Merit Because His Ineffective Assistance Claim Is Procedurally Defaulted And Cause And Prejudice Have Not Been Shown

Petitioner's second objection to the Report and Recommendation of the Magistrate Judge is found in what he refers to as "Count II." Petitioner objects to the Report for finding this claim to be procedurally defaulted and for failing to consider his grounds for cause and prejudice which would have excused the procedural default. (Doc. No. 151 at 17.) The Court agrees with the Magistrate Judge that the underlying claim is procedurally defaulted. However, Petitioner's objection that the Report fails to address two specific grounds for cause has merit. As a result, this Court has reviewed those grounds and finds that they do not excuse Petitioner's procedural default of the underlying claim.

Before addressing Petitioner's objections, additional background information is necessary. In his Third Amended Petition for a Writ of Habeas Corpus, Petitioner argues that trial counsel was ineffective for failing to investigate or present evidence of Petitioner's brain damage, mental impairments, family background or history. (Doc. No. 116 at 45.) However, Petitioner did not give the state courts a full and fair opportunity to hear his ineffective assistance claim because he kept changing his theory of ineffective assistance of counsel. For this reason,

the Court agrees with the Magistrate Judge's finding that this claim is procedurally defaulted. (Doc. No. 145 at 20.) Furthermore, Petitioner failed to demonstrate the necessary cause and prejudice to excuse the procedural default of this claim.

### a. Petitioner's First Ineffective Assistance Claim Is Procedurally Defaulted

As described above, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. Thus, "[a]ll claims that a petitioner in state custody attempts to present to a federal court for habeas corpus review must have been fairly presented to each level of the state courts . . .." Lines, 208 F.3d at 159 (citations omitted).

Petitioner failed to fairly present this specific claim of ineffective assistance of counsel to each level of the state court as required. On direct appeal from his murder conviction, Petitioner argued that trial counsel was ineffective for "fail[ing] to adequately prepare a presentation regarding any mitigating circumstances" at the sentencing phase of trial.[10] (Doc. No. 132, Exhibit A at 12.) After this claim failed on direct appeal, Petitioner argued more specifically in his first PCRA petition:

> Petitioner argues that trial counsel was ineffective because he failed to request psychiatric assistance for Pirela's defense at both the guilt and penalty phases of trial.
>
> Petitioner claims that such expert testimony would have proved that he was significantly depressed due to his belief that his brother, Miguel Pirela, was murdered by Pablo Ortiz, and that evidence of such depression could have been used to reduce the killing to voluntary manslaughter or a lesser degree of murder.

(Doc No. 132, Exhibit B at 16.) After this PCRA claim was denied, Petitioner filed another appeal to the Supreme Court of Pennsylvania. Petitioner argued, for the first time, that trial

_____

[10] Petitioner's instant claim relates to the guilt phase of his trial, however.

19

counsel was ineffective for "fail[ing] to investigate or present psychiatric mitigating evidence, including evidence of [Petitioner's] organic brain dysfunction . . .." (Doc. No. 132, Exhibit C at 50.) The decision of the PCRA court was affirmed. In the Third Amended Petition for a Writ of Habeas Corpus filed in this Court, however, Petitioner argues that trial counsel was ineffective for failing to investigate or present evidence of Petitioner's brain damage, mental impairments, family background or history. (Doc. No. 116 at 8.)

Regarding trial counsel's alleged failure to investigate or present evidence of family background and history, Petitioner failed to raise this claim on direct appeal, in his first PCRA petition, and on appeal from the denial of that petition to the Supreme Court of Pennsylvania. The second PCRA petition dealt exclusively with the Atkins issue concerning whether the death penalty could be imposed on a mental incompetent. In terms of trial counsel's alleged failure to investigate or present evidence of brain damage, Petitioner failed to raise this claim on direct appeal and at his first PCRA hearing. It was not until his PCRA appeal to the Supreme Court of Pennsylvania that Petitioner argued that trial counsel was ineffective for failing to investigate or present evidence of Petitioner's organic brain dysfunction. Because Petitioner did not invoke one complete round of the State's appellate review process on these alleged deficiencies of his counsel, he failed to give the state courts one full opportunity to hear this specific ineffective assistance claim. Thus, this Court agrees with the Magistrate Judge's finding that this claim is procedurally defaulted.

### b. Petitioner Cannot Establish Cause And Prejudice To Excuse Default

Petitioner objects to the Report and Recommendation for failing to consider the specific grounds for cause and prejudice to excuse the procedural default of this claim. (Doc. No. 151 at 17.) According to Petitioner, trial counsel was not fully alerted to Petitioner's mental

impairments because the Commonwealth withheld two psychiatric reports in its possession which concerned Petitioner's competency to be sentenced in another case.[11]  (Id.)  The two reports were done by Dr. Edwin P. Camiel, M.D. ("Camiel Report") and Dr. Sol. B. Barenbaum, Ph.D. ("Barenbaum Report").

Petitioner argues that the Prosecution's withholding of these reports constitutes cause under the "cause and prejudice" exception because it rendered this claim not reasonably available to trial counsel.  (Id.)  While these reports may have alerted trial counsel to issues about Petitioner's family history and background, they would not have alerted trial counsel to matters involving depression, organic brain dysfunction, or mental retardation.  The Camiel Report found that Petitioner "did not appear to require any diagnosis of mental retardation of even the borderline category."  (Doc. No. 117 at A138.)  Further, the report found "no evidence of any manifest psychiatric symptomatology such as anxiety or depression . . .."  (Id. at A139.)  The Barenbaum Report reached essentially similar conclusions.  Neither report made any mention of organic brain dysfunction or brain damage.  Accordingly, the withholding of the reports of the doctors is unavailing as a ground for cause.

Petitioner asserts another ground for cause to excuse the procedural default.  He alleges that the PCRA court's denial of expert funding severely constrained counsel and prevented him from developing the quality and quantity of mental health evidence that was eventually presented to the Atkins court.  (Id.)  According to Petitioner, "[s]uch evidence would have dramatically affected the fact-finder's ability to conclude that [Petitioner] had formed the intent necessary to prove premeditation."  (Id. at 18.)  Similar to Petitioner's ground for cause under his first claim,

_____

[11] The case involved the murder of Jorge Figueroa, for which Petitioner was convicted by a jury. Commonwealth v. Morales, 494 A.2d 367 (Pa. 1985).

21

the denial of funding could not have affected trial counsel's decisions in 1983. The alleged ground for cause occurred ten years later. The PCRA court's denial in 1993 is not the reason why trial counsel was allegedly ineffective at trial in 1983. Moreover, no prejudice exists. Trial counsel closely interacted with Petitioner during and after his waiver of a jury trial. From the record in this case, trial counsel did not have any concern that Petitioner at the time suffered a mental impairment that would have prevented him from understanding his rights in waiving a jury trial. Furthermore, the evidence of Petitioner's guilt was overwhelming. At this point, Petitioner has made no showing, and there is no reason to believe, that a jury would have rendered a verdict different from Judge Stout's verdict. Because Petitioner failed to establish cause and prejudice excusing procedural default, this Court will not review his underlying claim on the merits.

### C. The Next Ineffective Assistance Of Counsel Claim Raised In Petitioner's Third Objection Is Also Without Merit

Petitioner's third objection to the Report and Recommendation of the Magistrate Judge is contained in "Count III." Petitioner objects to the Report for "fundamentally misunderstand[ing] [Petitioner's] claim . . . as seeking relief from a capital sentence that was vacated in 2004, as opposed to his actual request for relief from his conviction . . .." (Doc. No. 151 at 20.) Petitioner contends that this misunderstanding led to the Report's "fail[ure] to reach the merits of [Petitioner's] actual claim . . .." (Id. at 21.) The Court agrees that the Report did not fully address Petitioner's argument. Upon review of the underlying claim, however, the Court finds it to be without merit.

The underlying claim appears in Petitioner's Third Amended Petition for a Writ of Habeas Corpus. (Doc. No. 116 at 52.) Petitioner contends that trial counsel was constitutionally ineffective for advising Petitioner to rely on Judge Stout's statement that she would not impose

the death penalty. (Id.) At the heart of this claim, Petitioner argues that if Judge Stout's statement could not be viewed as a promise to refrain from imposing the death penalty, then it was unreasonable for trial counsel to advise Petitioner to waive a jury trial, based upon the Judge's statement. (Doc. No. 151 at 21.) A close review of the state record reveals that Petitioner did not blindly follow the advice of trial counsel when deciding whether to waive a jury during the guilt phase of his trial.

As the argument is framed, Petitioner unknowingly and involuntarily waived his guilt phase jury trial by relying on trial counsel's advice to waive a jury trial. (Id.) This Court has already determined that the facts on record fairly support the finding that Petitioner made the decision to waive his right to a jury trial before Judge Stout made her statement at the pre-trial hearing. See Section IV.A.a. Petitioner later waived his right to a jury trial after a colloquy by Judge Stout, during which she apprised him of all the "essential ingredients of a jury trial" so that Petitioner would understand the significance of the right he was waiving. "These essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." Commonwealth v. Williams, 454 Pa. 368, 373 (1973). In addition to explaining these essential elements to Petitioner, Judge Stout also explained to him that she alone would determine his guilt or innocence if he decided to waive a trial by jury. (Doc. No. 117 at A33-40.) Aside from this on-the-record colloquy, Petitioner signed a written waiver as well.

Despite evidence on the record that the decision to waive a jury trial was made before Judge Stout's statement and that Petitioner underwent a valid colloquy, Petitioner argues in the Third Amended Petition for a Writ of Habeas Corpus that his mental retardation caused him to

rely on the advice of trial counsel without question and also caused his waiver to be involuntary

and unknowing. To support his position, Petitioner would have this Court ignore the facts on the

record, and instead, rely on affidavits and other reports that are not part of the factual record.[12]

During Petitioner's jury waiver colloquy, the following transpired:

> Q [Judge Stout]: Has anyone promised you anything to get you to waive a trial by jury?
>
> A [Petitioner]: No.
>
> Q: Has anyone made any threats to you or visited any violence against you?
>
> A: No.
>
> Q: Are you doing this of your free will?
>
> A: Yes.
>
> Q: Do you understand what you are doing?
>
> A: Yes.

(Doc. No. 117 at A39.)

--------------------------------------

[12] Petitioner submitted his own affidavit from 1992, nine years after he was convicted in the underlying case. In that affidavit, he states that he decided to waive his right to a jury trial because he believed that if he did so, he would not be sentenced to death. (Doc. No. 117 at A25.) He also contends that he did not understand that during the colloquy, when asked if any promises were made to him to induce him to waive a jury trial, Judge Stout could have been referring to the statement she made to trial counsel at the pre-trial conference. (Id. at A26.) Petitioner also claims that trial counsel assured him throughout his trial that he would not be sentenced to death, based on Judge Stout's statement. (Id.) Moreover, Petitioner submitted an affidavit from trial counsel, also given nine years after Petitioner's conviction. In that affidavit, trial counsel asserts that his client had not made a final decision as to whether to waive a jury at the time of Judge Stout's statement at the pre-trial conference. (Id. at A31.) Trial counsel also stated that based on Judge Stout's statement, he advised Petitioner to waive his right to a jury trial. (Id.) In addition, Petitioner seeks to introduce the findings of Dr. Puente who first evaluated Petitioner in 1999, sixteen years after he was convicted in the underlying case. Dr. Puente's findings were only presented to the PCRA court during Petitioner's Atkins hearing to determine whether he was mentally retarded and could receive a sentence of death. Claims regarding his guilt phase jury waiver were not at issue during his Atkins hearings.

The record reveals that despite his allegation that he lacked the mental capacity to understand the jury waiver colloquy, Petitioner was not answering Judge Stout's questions blindly. Rather, Petitioner engaged with Judge Stout during the colloquy process and had no difficulty asking her for clarification when he was unclear about something. For example, when Judge Stout first advised Petitioner that he had a constitutional right to be tried by a jury, Petitioner initially responded: "I do not understand that. What do you mean?" (Doc. No. 117 at A35-36.) At that time, Judge Stout clarified for Petitioner his right to trial by jury so that he understood what she meant. Later in the colloquy, Petitioner again asked for clarification to make sure he understood the rights he was waiving. At one point, when Judge Stout asked him whether he realized that the same Rules of Evidence would apply regardless of whether he waived trial by jury, Petitioner asked: "What do you mean with that?" (Id. at A37-38.) Again, Judge Stout explained this for Petitioner.

As previously discussed, under the pre-AEDPA standard of review, state court factual findings are presumed correct unless they are not "fairly supported by the record." Szuchon, 273 F.3d at 312 (3d Cir. 2001) (internal citations omitted). Regarding the instant claim, the state court findings, as well as the Magistrate Judge's finding that this claim is without merit, are fairly supported by the record, as evidenced above. Petitioner did not blindly rely upon the advice of trial counsel to waive a jury trial. The record shows he understood he was waiving a jury trial and doing it of his own free will. In fact, he engaged with Judge Stout and asked for clarification during his colloquy to make sure he understood the rights he was waiving. Petitioner made an informed decision to waive his right to a jury even before Judge Stout made the statement about the death penalty, and trial counsel cannot be found to have rendered ineffective assistance in this regard. As such, this claim fails.

**D. Petitioner's Fourth Objection That His <u>Brady</u> Claim Has Not Been Procedurally Defaulted, While Correct, Is Not A Basis For Relief Because The Underlying Claim Is Without Merit**

Petitioner's fourth objection to the Report and Recommendation of the Magistrate Judge appears in "Count IV." Petitioner objects to the Report for failing to consider his "relaxed waiver" argument, which is another reason to excuse procedural default. Petitioner claims that his <u>Brady</u> claim was not procedurally defaulted under the "relaxed waiver" rule. (Doc. No. 151 at 22.) Petitioner is correct that the Report failed to address his "relaxed waiver" argument. Thus, the Court disagrees with the Magistrate Judge's finding of procedural default and will review Petitioner's underlying claim on the merits. After reviewing Petitioner's <u>Brady</u> claim, however, the Court finds it is without merit.

Petitioner's underlying claim appears in his Third Amended Petition for a Writ of Habeas Corpus. There, Petitioner argues that the Commonwealth violated <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) when it withheld specific mental health evidence that was prepared by the Commonwealth to determine Petitioner's competency for sentencing in another case. (Doc. No. 116 at ¶ 113.) In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . .." 373 U.S. at 87. According to Petitioner, both the Camiel and Barenbaum Reports contained exculpatory information that should have been disclosed by the Commonwealth. The Magistrate Judge found this claim to be procedurally defaulted and recommended that it be denied. (Doc. No. 145 at 23.) This Court, however, finds that this claim was not procedurally defaulted. Nonetheless, the claim is without merit, and for this reason, relief is not warranted.

### a. Petitioner's <u>Brady</u> Claim Was Not Procedurally Defaulted Because The Relaxed Waiver Rule Applies

From 1978 to 1998, the Pennsylvania Supreme Court in effect promulgated a relaxed state waiver rule in certain capital cases.[13]  This limited, discretionary practice of relaxing state procedural rules for capital defendants became known as the "relaxed waiver rule."  The concept of relaxed waiver first appeared in <u>Commonwealth v. McKenna</u>, 383 A.2d 174, 180-81 (1978), but it was not until <u>Commonwealth v. Zettlemoyer</u> that the doctrine took hold in Pennsylvania jurisprudence.  454 A.2d 937, 955 (1982) <u>abrogated by</u> <u>Commonwealth v. Freeman</u>, 827 A.2d 385 (2003).  The following footnote from <u>Zettlemoyer</u> served as the basis for this rule until it was abrogated in 1998:

> This issue was not raised in post-verdict motions and is, accordingly, waived. However, for the reasons stated in [<u>McKenna</u>], and because this Court has an independent, statutory obligation to determine whether a sentence of death was the product of passion, prejudice or some other arbitrary factor, whether the sentence is excessive or disproportionate to that imposed in similar cases, and to review the record for sufficiency of the evidence to support aggravating circumstances, we will not adhere strictly to our normal rules of waiver. The primary reason for this limited relaxation of waiver rules is that, due to the final and irrevocable nature of the death penalty, the appellant will have no opportunity for post-conviction relief wherein he could raise, say, an assertion of ineffectiveness of counsel for failure to preserve an issue or some other reason that might qualify as an extraordinary circumstance for failure to raise an issue. Accordingly, significant issues perceived sua sponte by this Court, or raised by the parties, will be addressed and, if possible from the record, resolved.

<u>Zettlemoyer</u>, 454 A.2d at 955 n.19 (internal citations omitted).  This new "'relaxed waiver' policy created a post-conviction climate in which the state courts would waive procedural rules in capital cases."  <u>Lark v. Sec'y Pennsylvania Dep't of Corr.</u>, 645 F.3d 596, 627 (3d Cir. 2011).

---

[13] For example, if a capital defendant failed to make an evidentiary objection at trial, the Pennsylvania Supreme Court may have relaxed the traditional rules of waiver and allowed the defendant to raise the objection on appeal.

That climate lasted twenty years, until the state Supreme Court changed course on November 23, 1998. Commonwealth v. Albrecht, 720 A.2d 693, 700 (Pa. 1998) (finding the policy "virtually eliminated any semblance of finality in capital cases" and holding that the court would no longer "decline to apply ordinary waiver principles" in capital PCRA appeals).

In his Third Amended Petition for a Writ of Habeas Corpus, Petitioner argues that because this claim's procedural default occurred during the relaxed waiver period, federal habeas review of the claim should not be barred. Petitioner now objects to the Report for failing to consider his relaxed waiver argument. This Court agrees with Petitioner that the relaxed waiver rule applies to this claim.

On collateral appeal of his 1992 PCRA petition, Petitioner first claimed that he was deprived of his right to due process when the Commonwealth impermissibly withheld the mental health evidence that was prepared by the Commonwealth to determine his competency for sentencing in another case. Because Petitioner had the opportunity to raise this claim on direct appeal and did not do so, the state Supreme Court found the claim waived. Pirela, 726 A.2d at 1032-33. According to the Supreme Court, Petitioner's waiver resulted from his failure to meet the procedural requirements of 42 Pa. C.S.A. § 9543(a)(3).[14] Namely, he should have raised this claim on direct appeal. In his Report, the Magistrate Judge explained that the Supreme Court's finding of waiver rendered this claim procedurally defaulted and ineligible for federal habeas review. (Doc. No. 145 at 23.)

_____

[14] Among other requirements, "[t]o be eligible for relief under [the PCRA], the [P]etitioner must plead and prove by a preponderance of the evidence . . . [t]hat the allegation of error has not been previously litigated or waived." 42 Pa. Cons. Stat. Ann. § 9543(a)(3).

As explained above, where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred . . .." Coleman, 501 U.S. at 750. In his habeas petition here, Petitioner argues that the relaxed waiver rule rendered the state procedural rule, 42 Pa. C.S.A. § 9543(a)(3), inadequate to bar federal habeas review. (Doc. No. 151 at 23.) Since the Report does not address this argument, the Court will do so now under the "cause and prejudice" precepts.

A state procedural rule like 42 Pa. C.S.A. § 9543(a)(3) will be considered "adequate if it was 'firmly established and regularly followed' at the time of the alleged procedural default." Lewis, 581 F.3d at 105 (quoting Ford, 498 U.S. at 423-24 (quotation omitted)). This test is meant to ensure that at the time of the alleged default, Petitioner will have had fair notice of the need to follow the state procedural rule before federal habeas review will be barred. Bronshtein, 404 F.3d at 707. To determine whether 42 Pa. C.S.A. § 9543(a)(3) is "adequate" to bar federal habeas review, this Court must determine whether the rule was firmly established and regularly followed at the time of Petitioner's default, which first occurred in 1985 when Petitioner failed to argue the Brady claim on direct appeal to the Supreme Court of Pennsylvania. In February 1999, when the Supreme Court decided Commonwealth v. Pirela, 726 A.2d 1026 (Pa. 1999), the Court found that Petitioner waived this claim, or defaulted, when he failed to assert it on direct appeal.

As Petitioner points out, the waiver of this claim "occurred squarely within the relaxed-waiver era . . .." (Doc. No. 151 at 23.) It is true that the "[state Supreme Court's] relaxed waiver doctrine was discretionary" and not always applied in capital cases. Commonwealth v. Duffey, 889 A.2d 56, 64 (Pa. 2005). However, this Court is bound by decisions of the Third Circuit which consistently held that during the twenty year period from 1978 to 1998, PCRA procedural rules were inadequate to bar federal habeas review. See Lark, 645 F.3d at 611-13; Lewis, 581

F.3d at 106; <u>Albrecht v. Horn</u>, 485 F.3d 103, 115-16 (3d Cir. 2007); <u>Bronshtein</u>, 404 F.3d at 707-10; <u>Laird v. Horn</u>, 414 F.3d 419, 425 n.7 (3d Cir. 2005); <u>Fahy v. Horn</u>, 240 F.3d 239, 245 (3d Cir. 2001).

According to the Third Circuit, the law during this time period was "inhibitively opaque[,]" so it is unlikely that Petitioner had fair notice of the need to follow 42 Pa. C.S.A. § 9543(a)(3) at the time of his default in 1985. <u>Fahy</u>, 240 F.3d at 245. Because the Pennsylvania Supreme Court did not consistently and regularly apply PCRA waiver rules at the time of Petitioner's direct appeal in 1985, 42 Pa. C.S.A. § 9543(a)(3) is inadequate as applied to Petitioner in this case. Thus, this claim is not procedurally defaulted, and federal habeas review is not barred. The Court may review the merits of this claim.

### b. Petitioner's <u>Brady</u> Claim Is Without Merit

As previously mentioned, Petitioner argues that the Commonwealth impermissibly withheld specific mental health evidence in violation of <u>Brady v. Maryland</u>. (Doc. No. 116 at ¶ 113.) According to Petitioner, the Commonwealth had two mental health reports in 1983, yet only disclosed them after Petitioner filed the instant petition in 1990. (<u>Id.</u>) Because the Magistrate Judge found this claim to be procedurally defaulted, he did not review it on the merits. Despite finding this claim to be waived, the Supreme Court of Pennsylvania nevertheless reviewed it on the merits and found it to be baseless because no exculpatory evidence was withheld. <u>Pirela</u>, 726 A.2d at 1033. Reviewing that finding under the pre-AEDPA standard, this Court agrees that Petitioner's <u>Brady</u> claim is without merit.

In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S.

at 87. The Petitioner must demonstrate three components to successfully argue a <u>Brady</u> violation: "[1] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

First and foremost, Petitioner must show that the two reports at issue are either exculpatory or impeaching. <u>Id.</u> Evidence is considered exculpatory, or material, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). According to the Supreme Court, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." <u>United States v. Agurs</u>, 427 U.S. 97, 109-10 (1976).

The two reports here are not exculpatory. In the Camiel Report, Dr. Camiel did find that Petitioner appeared to be of "subnormal intellect[,]" though he "did not appear to require any diagnosis of mental retardation of even the borderline category." (Doc. No. 117 at A138.) According to Dr. Camiel, "[Petitioner] [did] not manifest a major mental illness which would be a factor in the disposition of [the underlying] case" and "appear[ed] to be competent for sentencing." (<u>Id.</u> at A138-39.) At worst, Dr. Camiel diagnosed Petitioner with a personality disorder. (<u>Id.</u> at A139.) The Barenbaum Report revealed similar findings, including that Petitioner has normal to low-normal intelligence and may be suffering from a mixed personality disorder. (<u>Id.</u> at A143.) Importantly, Dr. Barenbaum found "no evidence of major mental

illness" and "no psychological impairments which would preclude ordinary sentencing options." (Id. at A143-44.)

The conclusions contained in these reports do not undermine confidence in the outcome of this case. Findings that Petitioner had below-average intelligence and a possible personality disorder are not sufficient to undermine his first-degree murder conviction, which was adequately supported by evidence at trial. Applying the pre-AEDPA standard, this Court finds that the Pennsylvania Supreme Court's conclusion that "the reports contain nothing exculpatory" is clearly supported by the record. Pirela, 726 A.2d at 1033.

Even if this information may have led trial counsel to develop and Judge Stout to find additional mitigating factors about Petitioner's mental health, as he alleges (Doc. No. 151 at 24), Petitioner's sentence would only have been mitigated down from the death penalty to life imprisonment. Because Petitioner's death penalty sentence has already been vacated and reduced to life in prison, this claim is moot. Furthermore, the mere possibility that these reports might have helped the defense eventually discover exculpatory evidence is too speculative to establish materiality in the constitutional sense. Agurs, 427 U.S. at 109-10. Because Petitioner cannot demonstrate that either report contained exculpatory evidence, he cannot successfully show a Brady violation, and this claim fails on the merits.

**E. Petitioner's Fifth Objection That The Incorrect Standard Of Review Was Applied, While Correct, Is Not A Basis For Relief Because The Result Is The Same When Applying The Pre-AEDPA Standard Of Review**

Petitioner's fifth objection to the Report and Recommendation of the Magistrate Judge appears under "Count V." Petitioner objects to the Report for "applying the wrong standard of review, ignoring key evidence and failing to address [Petitioner's] arguments of state court error . . .." (Doc. No. 151 at 26.) Although these are three separate objections, they all relate to a

claim of ineffective assistance of counsel involving the failure of trial counsel to present Pedro Torres ("Torres") as a witness at trial. Petitioner claims that Torres would have provided evidence that would have exonerated him in his underlying criminal case.

The first objection to the Report is that the Magistrate Judge, although correctly stating that the AEDPA is inapplicable here (Doc. No. 145 at 4 n.4.), applied the current AEDPA standard rather than the more lenient pre-AEDPA standard of review that applies to this particular claim. (See id. at 26.) As noted above, prior to the enactment of the AEDPA, a writ of habeas corpus could issue "if the reviewing court [found] that the constitutional error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" Szuchon, 273 F.3d at 319 (quoting Brecht, 507 U.S. at 623 (1993)). Under this standard, "state court factual findings were presumed correct unless, inter alia, they were not 'fairly supported by the record.' State court legal conclusions were reviewed de novo, as were mixed questions of law and fact." Szuchon, 273 F.3d at 312 (internal citations omitted). With the advent of the AEDPA, however:

> Congress placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners. The relevant provision, 28 U.S.C. § 2254(d)(1), prohibits a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J. concurring). The Court agrees that the pre-AEDPA standard applies to Petitioner's fifth claim, given the fact that Petitioner filed his habeas petition in 1990, six years before the AEDPA was enacted. Even under this standard of review, the fifth claim raised in the Third Amended Petition for a Writ of Habeas Corpus does not warrant relief.

Although the primary objection asserted is that incorrect standard was applied, Petitioner does make two other related objections. First, Petitioner objects to the Report's failure to consider post-trial evidence cited by Petitioner that an allegedly favorable witness, Torres, was willing to testify at the time of trial. (Doc. No. 151 at 25.) While the Report did not address this evidence specifically, this Court has reviewed, infra, the affidavit of Torres. That affidavit does not demonstrate that the Report of the Magistrate Judge would have been different had this evidence been considered by him.

Second, Petitioner objects to the Report for its failure to address his argument that the PCRA court erred when it determined that Torres' testimony was cumulative. (Id.) This objection is without merit. Alleged errors of the PCRA court do not preclude an independent decision as to whether Petitioner's trial counsel was ineffective. Furthermore, alleged state errors on collateral appeal are not a proper basis for federal habeas relief. See Section IV.G.

In his Third Amended Petition for a Writ of Habeas Corpus, Petitioner argues that he was denied effective assistance of counsel during the guilt phase of his trial when trial counsel failed to call Torres as a witness. (Doc. No. 116 at 55-56.) According to Petitioner, had Torres been called to testify as requested, he would have testified that Petitioner did not order his co-defendant, Carlos Tirado, to kill the victim, Pablo Ortiz. (Id. at ¶ 123.) Seven months prior to Petitioner's capital trial, however, Torres gave a statement to police in which he stated that Petitioner had struck the victim, threatened him with a gun, ordered him to be injected with battery acid, and also ordered that he be killed and his body disposed. Pirela, 507 A.2d at 29. Based upon this unfavorable account, the Pennsylvania Supreme Court found, on both direct and PCRA appeal, that trial counsel was not ineffective for failing to call this witness. (Doc. No. 116 at ¶¶ 122-23; Doc. No. 132 at 50.)

34

Four years after trial, Torres recanted his statement in a signed affidavit. (Doc. No. 116 at ¶ 122.) In his affidavit, Torres stated that Petitioner "did not inflict any bodily injury to Pablo Ortiz" and did not order anyone else to harm him. (Doc. No. 117 at A196-97.) Despite the fact that Torres changed his position years later, Petitioner asserted that Torres was ready and willing to testify on behalf of Petitioner at the time of trial. (Doc. No. 151 at 25.) Petitioner argues that trial counsel was ineffective for failing to call this witness.

To evaluate Petitioner's claim of ineffective assistance of counsel, the Court must apply a two-prong test enunciated by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under this standard, trial counsel is presumed to have acted reasonably and effectively unless Petitioner can show that: (1) trial counsel's "representation fell below an objective standard of reasonableness[;]" and (2) there was a "reasonable probability that, but for [trial counsel's] unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 687-88, 694. "Judicial scrutiny of counsel's performance must be highly deferential . . . [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .." <u>Id.</u> at 689. To overcome the presumption of sound trial strategy, "[P]etitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." <u>Thomas v. Varner</u>, 428 F.3d 491, 499 (3d Cir. 2005).

As discussed above, because Petitioner filed his habeas petition in this Court in 1990, it is subject to pre-AEDPA standards. Thus, the Magistrate Judge was permitted to presume that state court factual findings were correct unless they were not "fairly supported by the record." <u>Szuchon</u>, 273 F.3d at 312 (internal citations omitted). In his Report, the Magistrate Judge correctly stated that the AEDPA is inapplicable here. (Doc. No. 145 at 4 n.4.) However, as

noted by both Petitioner and Respondent, the Magistrate Judge inadvertently applied the AEDPA standard of review when reviewing this claim. Since the incorrect standard was applied, this Court will apply a pre-AEDPA analysis and review this claim on the merits.

Petitioner argues that the Pennsylvania Supreme Court erroneously found, on two occasions, that trial counsel did not act unreasonably for failing to call Torres as a witness. (Doc. No. 116 at ¶¶ 122-23.) The Magistrate Judge found the same. Although the Magistrate Judge mistakenly applied the incorrect AEDPA standard, applying the pre-AEDPA standard supports the same outcome. Even if, as Petitioner contends, Torres was ready and willing to testify favorably at trial, his testimony would have been subject to impeachment with the contradictory statement he had previously given to police. Petitioner's "defense depended on the credibility of his denial . . .." (Doc. No. 151 at 26.) This credibility would have been called into question after hearing from an eye-witness who had previously told police that Petitioner ordered the killing of Pablo Ortiz. Furthermore, had Torres testified according to the account given in his affidavit, his statement that Petitioner did not inflict bodily injury upon the victim would have contradicted Petitioner's own trial testimony that he hit the victim with his fists about five times, in the head and face. (Doc. No. 117 at A183.) Such contradictions would have harmed, rather than bolstered, Petitioner's defense. Therefore, it was not unreasonable for trial counsel to fail to call Torres as a witness. Because the state court factual findings were fairly supported by the record, this claim of ineffective assistance of counsel fails under the pre-AEDPA standard of review.

### F. Petitioner's Sixth Objection That His Constitutional Claims Have Not Been Procedurally Defaulted, While Correct, Is Not A Basis For Relief Because The Underlying Claims Are Without Merit

Petitioner's sixth objection to the Report and Recommendation of the Magistrate Judge is in "Count VI." Again, Petitioner argues that the Report fails to consider the "relaxed waiver"

argument (Doc. No. 151 at 27).  Petitioner claims that had the Report considered this argument, no procedural default would have been found on his claims that he was denied effective assistance of counsel and due process for the failure of his trial counsel to request an additional interpreter and for the trial court to provide one.  (Id.)  This Court agrees that the Magistrate Judge should have considered the "relaxed waiver" argument and decided the constitutional claims raised by Petitioner on the merits.  The problem with Petitioner's position is that consideration of his claims on the merits does not warrant relief.

Without considering the "relaxed waiver" argument, the Magistrate Judge found these constitutional claims to be procedurally defaulted, based on the state Supreme Court's finding on collateral appeal that they had been waived.  (Doc. No. 145 at 29.)  While this decision would normally be conclusive, Petitioner filed his claim during a period when the Pennsylvania Supreme Court frequently applied the relaxed waiver doctrine.  For the reasons listed above in Section IV.D.a, the procedural rule relied upon to support the finding of waiver, 42 Pa. C.S.A. § 9544(b), is not an adequate ground on which to bar federal habeas relief.  Because the relaxed waiver rule operates to excuse Petitioner's procedural default of this claim, the Court may review the merits of the sixth claim for relief.

In his Third Amended Petition for a Writ of Habeas Corpus, Petitioner's claim is two-fold.  First, Petitioner alleged that trial counsel was ineffective for failing to request additional interpreting services at trial, in violation of the Sixth Amendment.  (Doc. No. 151 at 27.)  Second, he alleged that Judge Stout failed to perform her concurrent duty to ensure that adequate interpreting services were provided, in violation of the Fourteenth Amendment.  (Id.)  Petitioner argues that one interpreter shared between three defendants at trial was not sufficient, resulted in

Petitioner not being able to confront the witnesses against him, and impaired Petitioner's ability to confer with counsel during the questioning of witnesses. (Doc. No. 116 at ¶¶ 125-29.)

Petitioner's two separate arguments about the conduct of his trial counsel and Judge Stout both require a showing of prejudice. Under Strickland, outlined above, Petitioner must demonstrate that there was a reasonable probability that, but for trial counsel's failure to request a second interpreter, the trial result would have been different. 466 U.S. at 687-88, 694. In evaluating Judge Stout's alleged failure to ensure that adequate interpreting services were provided, Petitioner must demonstrate that the error "had substantial and injurious effect or influence in determining [Judge Stout's] verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Under this standard, Petitioner is "not entitled to habeas relief based on trial error unless [he] can establish that it resulted in 'actual prejudice.'" Id. (citing United States v. Lane, 474 U.S. 438, 449 (1986)).

Given that "actual prejudice" is a required element of both claims, the Court agrees with Respondent that "Petitioner's inability to demonstrate harm is fatal . . .." (Doc. No. 132 at 55.) While Petitioner alleged that he was unable to confront witnesses and suffered from impaired communication with trial counsel, he fails to explain how the lack of a second interpreter would have resulted in a different outcome. On collateral appeal, the state Supreme Court found that Petitioner could "point[] to no testimony of any witness which he did not understand or no instance where, because of the lack of an interpreter, he did not have the opportunity to confront witnesses." Pirela, 726 A.2d at 1033. Still, nowhere in Petitioner's Third Amended Petition for a Writ of Habeas Corpus or Objections did he point to any specific harm that could have been avoided had he been provided a second interpreter. Tellingly, Petitioner never asked for an

additional interpreter or expressed difficulty conferring with counsel during the course of his

trial.  Because Petitioner cannot show prejudice, both of these claims are without merit.

### G.  Petitioner's Seventh Objection Is Without Merit Because The Underlying Claim Of State Error Does Not Provide A Basis For Federal Habeas Review

Petitioner's seventh objection to the Report and Recommendation of the Magistrate

Judge appears in "Count VII."  Petitioner objects to the Report and Recommendation for

applying an "erroneous view of the law that contradicts the United States Supreme Court . . .."

(Doc. No. 151 at 29.)  The Magistrate Judge did not apply an erroneous view of the law.  Instead,

he correctly found that this claim does not arise under the Constitution, laws, or treaties of the

United States and therefore does not provide a basis for federal review or relief.  (Doc. No. 145

at 31) (citing 28 U.S.C. § 2254(a)).

In the Third Amended Petition, Petitioner argues that he was deprived of his right to due

process when the PCRA court denied his requests for discovery, expert funding, and an

evidentiary hearing.  (Doc. No. 116 at 60.)  "[E]rrors of state law cannot be repackaged as

federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104,

110 (3d Cir. 1997).  That is precisely what Petitioner has done here, and this Court agrees with

Respondent that "these claims are nothing more than allegations of state law error and abuse of

discretion dressed up as due process claims . . .."  (Doc. No. 132 at 61.)

This Court "may not issue the writ on the basis of a perceived error of state law[,]" and

Petitioner has failed to demonstrate that the alleged errors are sufficiently egregious to amount to

a denial of due process.  Pulley v. Harris, 465 U.S. 37, 41 (1984).  Furthermore, because these

alleged state court errors occurred at the PCRA level, they ordinarily would be unreviewable

here.  See Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in

collateral proceedings . . . are not a proper basis for habeas relief from the original conviction.  It

is the original trial that is the 'main event' for habeas purposes."); <u>Hassine v. Zimmerman</u>, 160

F.3d 941, 954 (3d Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is

limited to evaluating what occurred in the state or federal proceedings that actually led to the

petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into

the habeas calculation.").  For these reasons, Petitioner's claim is unreviewable here.

### H.  Petitioner's Eighth Objection Is Unfounded Because The Underlying Cumulative Error Claim Is Without Merit

Petitioner's eighth objection to the Report and Recommendation of the Magistrate Judge

is found in "Count VIII."  He contends that the combined effect of the alleged errors he has

asserted undermined the fairness of his trial.  Petitioner objects to the Report for "erroneously

[finding Petitioner's claims] defaulted" and for its failure to "consider the prejudice to

[Petitioner] resulting from any of the errors demonstrated in his other claims . . .."  (Doc. No. 151

at 30.)  While this Court has disagreed with the Magistrate Judge in several respects as discussed

in this Opinion, this Court has found no errors in the underlying case and has found no prejudice

to excuse any alleged default.  The allegation that cumulative errors warrant relief is

unpersuasive.  Therefore, this claim fails.

### I.  Petitioner's Ninth Objection Is Unfounded Because The Underlying Ineffective Assistance Claim Is Without Merit

Petitioner's ninth objection to the Report and Recommendation of the Magistrate Judge

appears in "Count IX."  Petitioner objects to the Report for failing to address the merits of his

cumulative claims of ineffective assistance of counsel and his arguments regarding cause and

prejudice to excuse any procedural default.  (Doc. No. 151 at 31.)  As the Magistrate Judge notes

in his Report, the ninth claim is encompassed in the preceding Section.  Moreover, where the

Magistrate Judge did not review the merits because he incorrectly found the claims procedurally

defaulted, this Court has reviewed Petitioner's claims and found them to be meritless.

Furthermore, where the Magistrate Judge did not fully address Petitioner's cause and prejudice

arguments, this Court has reviewed those assertions and found that procedural default was not

excused.  Considering Petitioner's claims cumulatively, no relief is warranted.

## V.      CONCLUSION

For the above reasons, the Court will adopt the Magistrate Judge's Report in part and, in

accordance with the Recommendation, will deny the Third Amended Petition for a Writ of

Habeas Corpus.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SIMON PIRELA, a/k/a SALVATORE
MORALES,

                    Petitioner,

    v.

COMMISSIONER MARTIN HORN, et al.,

                    Respondent.

CIVIL ACTION
NO. 90-5013

## ORDER

**AND NOW**, this 1st day of October, 2013, upon consideration of the Sur Reply of the

District Attorney's Office of Philadelphia ("Respondent") to Petitioner's Memorandum of Law

(Doc. No. 81), the Third Amended Petition for a Writ of Habeas Corpus (Doc. No. 116),

Appendix to the Petition (Doc. No. 117), Response to the Petition with accompanying exhibits

(Doc. No. 132), Reply Memorandum in Support of the Petition (Doc. No. 141), Report and

Recommendation of United States Magistrate Judge Henry S. Perkin (Doc. No. 145), Objections

to the Report and Recommendation (Doc. No. 151), Response to the Objections (Doc. No. 156),

Reply in Support of the Objections (Doc. No. 157), and the pertinent state court record, and for

the reasons contained in the accompanying Opinion of this Court, it is **ORDERED** that:

1. The Report of Magistrate Judge Perkin (Doc. No. 145) is **APPROVED** and
   **ADOPTED** as modified.

2. The Recommendation of Magistrate Judge Perkin is **APPROVED** and **ADOPTED**
   and the Third Amended Petition for Writ of Habeas Corpus (Doc. No. 116) is
   **DENIED**.

3. A certificate of appealability will not be issued because, based on the analysis
   contained in Magistrate Judge Perkins' Report and Recommendation, as approved
   and adopted by this Court, and based on the analysis contained in the Opinion of the

1

Court, a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the habeas petition.

4. The Clerk of Court shall close the above-captioned case.

BY THE COURT:

<u>/s/ Joel H. Slomsky</u>
JOEL H. SLOMSKY, J.