IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMON PIRELA, a/k/a SALVATORE MORALES,<br><br>                     Petitioner,<br><br>    v.<br><br>COMMISSIONER MARTIN HORN, et al.,<br><br>                     Respondents. | CIVIL ACTION<br>NO. 90-5013 |

## OPINION

**Slomsky, J.**                                                                                                   April 2, 2014

**I.      INTRODUCTION AND BACKGROUND INFORMATION**

This case arises from the Third Amended Petition for a Writ of Habeas Corpus filed by Simon Pirela, a/k/a Salvatore Morales[1] ("Petitioner"). (Doc. No. 116.) Petitioner seeks federal habeas relief based on a variety of constitutional violations that allegedly occurred during his trial and post-conviction proceedings in state court. The Court has already recited the facts of this case at length in its prior Opinion, and therefore, only an abbreviated account is needed here. (See Doc. No. 158 at 2-6.)

On June 24, 1983, sitting without a jury,[2] the Honorable Juanita Kidd Stout of the Philadelphia Court of Common Pleas found Petitioner guilty of first degree murder and criminal conspiracy for the May 6, 1981 death of Pablo Ortiz. On March 12, 1984, Judge Stout imposed a capital sentence for these crimes. Because it was a capital case, Petitioner was permitted to

---

[1] Petitioner used an alias at some point, and it is unclear from the record whether the first name should be spelled as Salvatore or Salvador. Because the parties have been using Salvatore in the most recent filings, the Court will use this spelling for the sake of consistency.

[2] Petitioner waived his right to a jury for both the guilt and penalty phases of his trial.

appeal directly to the Pennsylvania Supreme Court, which he did.  On March 21, 1986, the Pennsylvania Supreme Court rejected Petitioner's claims as meritless and affirmed his judgment of sentence.  Thereafter, on July 31, 1990, Petitioner filed the instant habeas petition, and the case was placed in suspense pending exhaustion of Petitioner's claims in state court.

In the years following, Petitioner sought post-conviction relief in state court pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq.  He filed his first PCRA petition on June 8, 1992.  The state courts denied Petitioner's claims for relief.  Then, on August 19, 2003, Petitioner filed a second PCRA petition in which he claimed that his death sentence was unconstitutional under Atkins v. Virginia, 536 U.S. 304, 321 (2002).  He did not challenge his conviction in this second PCRA petition.  On April 30, 2004, the PCRA court held that Petitioner was mentally retarded[3] under Pennsylvania law and therefore ineligible for execution under Atkins, vacating Petitioner's death sentence.  The Pennsylvania Supreme Court affirmed this ruling on August 20, 2007.

On June 11, 2009, Petitioner filed his Third Amended Petition for a Writ of Habeas Corpus,[4] challenging his state court conviction and various aspects of his collateral appeal.  The petition was referred to United States Magistrate Judge Henry S. Perkin for a Report and

---

[3] While "mentally retarded" and "mental retardation" were accepted terminology in 2003, today, those terms have negative connotations and are considered offensive to many people.  In fact, in 2010, Congress passed Rosa's Law, which was designed to change references to "mental retardation" in certain federal laws to "intellectual disability," and to change references to a "mentally retarded" individual to an individual with an "intellectual disability."  Rosa's Law, PL 111-256, Oct. 5, 2010, 124 Stat 2643.  This change in terminology reflects widespread adoption of the term "intellectual disability" by most advocates, government agencies, and various public and private organizations.  Therefore, the Court will use that term here.

[4] On July 31, 1990, Petitioner filed his first pro se Petition for a Writ of Habeas Corpus with this Court. (Doc. No. 1.)  Then, on March 29, 2000, Petitioner filed a counseled Amended Petition. (Doc. No. 44.)  On June 19, 2003, Petitioner filed his Second Amended Petition for a Writ of Habeas Corpus. (Doc. No. 95.)  Finally, on June 11, 2009, Petitioner filed his Third Amended Petition. (Doc. No. 116.)

2

Recommendation. On May 14, 2012, the Magistrate Judge issued his Report, recommending that Petitioner's claims for federal habeas relief be denied and a certificate of appealability not be issued. (Doc. No. 145.) On August 6, 2012, Petitioner filed objections to the Magistrate Judge's Report and Recommendation. (Doc. No. 151.) Thereafter, on October 1, 2013, after reviewing Petitioner's objections, this Court adopted the Magistrate Judge's Report in part and ultimately denied the Third Amended Petition. (Doc. Nos. 158-59.) On October 29, 2013, Petitioner filed a timely Motion for Reconsideration. (Doc. No. 165.) Respondents oppose the Motion (Doc. No. 166), and the Motion is now ripe for disposition. For reasons that follow, the Court will deny Petitioner's Motion for Reconsideration.

**II.    STANDARD OF REVIEW**

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). Thus, "[a] proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)). However, "[a] motion for reconsideration 'addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.'" In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)). Therefore, "[m]ere dissatisfaction with the Court's ruling [will not be] a proper basis for reconsideration." Progressive Cas. Ins. Co. v. PNC Bank, N.A., 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999). Furthermore, "[b]ecause federal courts have a strong

3

interest in the finality of judgments, motions for reconsideration should be granted sparingly." In re Asbestos Prods. Liab. Litig. (No. VI), 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011) (quoting Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)).

### III.   ANALYSIS

In his Third Amended Petition for a Writ of Habeas Corpus, Petitioner raised nine claims for the Court to consider. (Doc. No. 116.) After the Magistrate Judge recommended that all nine claims for relief be denied, Petitioner filed nine objections to the Report and Recommendation. (Doc. No. 151.) The Court reviewed those objections in its prior Opinion and denied Petitioner's claims for federal habeas relief. (Doc. Nos. 158-59.) In his present Motion, Petitioner asks the Court to reconsider its denial of the Third Amended Petition and its decision to deny issuance of a certificate of appealability. (Doc. No. 165.) As noted above, relief may only be granted if Petitioner demonstrates one or more of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Wiest, 710 F.3d at 128 (quoting Lazaridis, 591 F.3d at 669). In his Motion for Reconsideration, Petitioner sets forth eleven alleged errors of law and fact that he contends warrant departure from the Court's prior Opinion and Order.[5] (Doc. No. 165 at 3-5.) Only one of Petitioner's arguments merits a brief discussion here.

In his Motion for Reconsideration, Petitioner first contends that the Court erred in not granting him an evidentiary hearing to consider evidence relating to his intellectual disability. (Doc. No. 165 at 7.) Petitioner relies on Townsend v. Sain, 372 U.S. 293 (1963) and Johnson v. Upton, 130 S.Ct. 2217 (2010) in support of this argument. Both of those cases involved federal habeas petitions that were filed prior to the enactment of the Antiterrorism and Effective Death

---

[5] Petitioner does not seek reconsideration of the Court's decision regarding Claims IV, V, VIII and IX. (Doc. No. 165 at 6 n.1.)

Penalty Act of 1996 ("AEDPA"). Under pre-AEDPA standards, there were six circumstances in which a district court was required to hold an evidentiary hearing: "1) the merits of the factual dispute were not resolved in the state hearing; 2) the state factual determination is not fairly supported by the record as a whole; 3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; 4) there is a substantial allegation of newly discovered evidence; 5) the material facts were not adequately developed at the state-court hearing; or 6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." Johnson, 130 S.Ct. at 2221 (quoting Townsend, 372 U.S. at 313).

This case is also governed by these pre-AEDPA standards because Petitioner filed his habeas petition in 1990, prior to the enactment of the AEDPA. Petitioner contends that the Court could not rely on the state courts' factual findings because those findings were not fairly supported by the record, were not based on a fact-finding procedure that was adequate to afford a full and fair hearing, and were made without a full, fair and adequate hearing being held. (Doc. No. 165 at 36.) For these reasons, Petitioner contends that this Court erred in denying his request for an evidentiary hearing.

As an initial matter, Petitioner did not raise this issue in his Third Amended Petition for a Writ of Habeas Corpus. While Petitioner requested an evidentiary hearing in his prayer for relief (Doc. No. 116 at 69), he offered no argument in support of this request. It was not until Petitioner filed his objections to the Magistrate Judge's Report and Recommendation that he argued why he is now entitled to an evidentiary hearing. (Doc. No. 151 at 5-6.) Under the local rules of this Court, "new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."

Local R. Civ. P. 72.1.IV(c). Petitioner could have raised this issue in his Third Amended Petition, explaining why he is entitled to an evidentiary hearing, yet he did not do so. Therefore, his request for an evidentiary hearing is waived because it was not asserted timely.

Even if Petitioner's argument is not waived, the Court is not convinced that he has demonstrated any entitlement to an evidentiary hearing at this time. Petitioner's contentions derive from the fact that the PCRA court denied his claims without granting Petitioner's request for an additional evidentiary hearing. After Petitioner filed his first PCRA petition on June 8, 1992, hearings were held before the Honorable Joseph I. Papalini regarding discovery and the admissibility of evidence. Commonwealth v. Pirela, Jan. Term 1983, Nos. 2143-48, at 5 (C.C.P. Phila., Dec. 7, 1994). An evidentiary hearing was also held on June 9, 1993, to preserve the testimony of Petitioner's elderly mother. Id. On November 29, 1994, the matter was reassigned to Judge Stout, the same judge who convicted and sentenced Petitioner ten years earlier. Id. Petitioner sought an additional evidentiary hearing, but Judge Stout denied that request, having determined that a decision could be made on Petitioner's PCRA claims based on the existing record. Id.

In denying Petitioner's claims, Judge Stout relied on a 1991 examination of Petitioner by Christine Torres-Matrullo, Ph.D., a Spanish-speaking clinical psychologist. Id. at 13. Ms. Torres-Matrullo explained that Petitioner's brother's death caused Petitioner to experience severe depression, hopelessness, and a state of irrationality, but she did not report that Petitioner had any cognitive functioning problems.[6] Id. at 13-14. Judge Stout also reviewed two reports from 1983,

---

[6] In his first PCRA petition, Petitioner claimed that additional expert testimony would have proved that Petitioner was significantly depressed due to his belief that his brother, Miguel Pirela, was murdered by Pablo Ortiz. He argued that evidence of such depression could have been used to reduce the killing of Pablo Ortiz to voluntary manslaughter or a lesser degree of murder. (Doc No. 132, Ex. B at 16.)

which concerned Petitioner's competency to be sentenced in another case. The two reports were written by Dr. Edwin P. Camiel, M.D. ("Camiel Report") and Dr. Sol. B. Barenbaum, Ph.D. ("Barenbaum Report"). The Camiel Report found that Petitioner "did not appear to require any diagnosis of mental retardation of even the borderline category." (Doc. No. 117 at A138.) Judge Stout also considered the testimony of Petitioner's mother, Concepcion Bones Pirela, who testified at an evidentiary hearing before the PCRA court about Petitioner's childhood in Puerto Rico. Id. at 23. Her testimony included the following facts: Petitioner's mother fell while pregnant with Petitioner; he was born with the umbilical cord wrapped around his neck; his head was repeatedly banged as an infant; he only attended school to the third grade; his father died when Petitioner was young; Petitioner worked in the sugar cane fields to help his family; and he would forget items when his mother sent him to the store, so he would ask her for a written list. Id. at 23 n.12. Based on this evidence, Judge Stout denied Petitioner's PCRA claims without an additional evidentiary hearing. Judge Stout found, inter alia, that none of the supplemental evidence would have led the trial court to find other mitigating circumstances that would outweigh the aggravating circumstance.[7]

Petitioner appealed, and the Pennsylvania Supreme Court affirmed the PCRA court's denial of Petitioner's claims and his request for an additional hearing. The Pennsylvania Supreme Court found that "[t]he record reflects that [Petitioner] was tried five times between 1983 and 1986 and received three mental health evaluations by court psychiatrists and a psychologist. [Petitioner] fail[ed] to demonstrate that his claimed dysfunction rendered him

---

[7] At Petitioner's sentencing, the trial court found one mitigating circumstance, which was youth. Commonwealth v. Pirela, Jan. Term 1983, Nos. 2143-48, at 23 (C.C.P. Phila., Dec. 7, 1994). The court also found one aggravating circumstance: the fact that Petitioner had been previously convicted of another offense for which a sentence of life imprisonment or death was possible. Id. The trial court concluded that the aggravating circumstance outweighed the mitigating factor. Id.

7

incapable of premeditation." Commonwealth v. Pirela, 726 A.2d 1026, 1034 (Pa. 1999). Because the record reflected that Petitioner's underlying claims were without merit, the Court concluded that no additional evidentiary hearing was required. Id. at 1037. Likewise, this Court agrees that the record available at the time of Petitioner's first PCRA petition supported the findings of the PCRA court and the Pennsylvania Supreme Court. Even though Petitioner's mental health may have deteriorated over the years, that does not undermine the fact that at the time of his first PCRA appeal, the record contained all relevant mental reports. An evidentiary hearing was held to obtain testimony from Petitioner's mother, and the state courts' factual findings were fairly supported by the record. Thus, this Court could rely on those findings and is not required to provide Petitioner with an evidentiary hearing now.

Contrary to Petitioner's contentions, this is not a situation in which the Court must hold an evidentiary hearing. See Johnson, 130 S.Ct. at 2221 (quoting Townsend, 372 U.S. at 313). The merits of the factual dispute were resolved by the PCRA court, and as noted already, the state courts' factual determinations were fairly supported by the record. The fact-finding procedure was adequate to provide a full and fair hearing. There is not a substantial allegation of newly discovered evidence in this case, and the material facts were adequately developed in the PCRA court. Lastly, it appears that the PCRA court afforded Petitioner a full and fair hearing. In fact, a hearing was held to obtain testimony from Petitioner's mother. Because none of the Townsend circumstances are implicated here, an evidentiary hearing is not warranted.

## IV.     CONCLUSION

The Court has reviewed Petitioner's remaining arguments for reconsideration. Petitioner has failed to demonstrate a need to correct a clear error of fact or law as required. Therefore, Petitioner's Motion for Reconsideration will be denied.